UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    DAVID A. LAFEE,                                   Case No. 09-36657-dof
                                                              Chapter 7 Proceeding
            Debtor.                                      Hon. Daniel S. Opperman
_____/

Opinion Regarding Chapter 7 Trustee's Motion to Compel Delivery of Earnest-Money Deposit

       The Chapter 7 Trustee in this case, Samuel Sweet, filed a Motion to Compel Delivery of Earnest-Money Deposit held by Carson Realty. The deposit is in the amount of $30,000 and was given to Carson Realty by Dennis Pomante, along with an Offer to Purchase real estate commonly known as 1417 Blue Water Drive, Fenton, Michigan and as detailed in an Offer to Purchase dated June 7, 2010. Mr. Pomante, along with his partner, John Bowman, object to the Trustee's request.

       The Debtor owned 1417 Blue Water Drive, Fenton, Michigan ("Blue Water Property"), but was unable to make the payments on the note that was secured by a mortgage on the Blue Water Property. As has become a trend in this area, the mortgagee, GMAC Mortgage, conducted a foreclosure sale on the Blue Water Property. The successful bid at the sale was $232,614 which Mr. Sweet, after investigation, determined to be considerably lower than the actual market value of the Blue Water Property. Sensing that time was of the essence because the foreclosure sale was held on March 17, 2010, Mr. Sweet began to market the property and received an Offer to Purchase from Dennis Pomante. Mr. Pomante offered to purchase the Blue Water Property for $359,900 subject to court approval. Mr. Pomante also tendered a check in the amount of $30,000 to Carson Realty as an earnest-money deposit. The specific language regarding the disposition of the $30,000 deposit is contained in paragraph 3 of the Offer to Purchase:

1

3. The broker is hereby authorized to present this offer and the deposit of thirty thousand ($30,000) Dollars in form of check shall be held by Carson Realty according to regulations of the Michigan Department of Commerce According to P.A. 229 of 1980, as amended and applied to the purchase price if the sale is consummated or returned forthwith if this offer is rejected.

Given the nature of this property and his fiduciary duties as a Trustee, Mr. Sweet sought approval to sell this property by way of a motion filed with this Court on June 25, 2010 (the "Sale Motion"). The Sale Motion detailed the Offer to Purchase and also detailed the actions that Mr. Sweet wanted to take in order to conduct an auction sale on this property. In particular, the Sale Motion contained the following relevant paragraphs:

> 30. The sale is subject to higher or better offers.
> 31. Under the proposed order, before July 26, 2010, at noon, any party interested in submitting competing bids on terms at least as favorable as those stated in the attached Purchase Agreement must provide Mr. Sweet with a signed purchase agreement and a cashier's check or money order deposit in the amount of at least $30,000. Moreover, the signed purchase agreement must make an initial overbid of at least $360,900.
> 32. If Mr. Sweet receives any higher or better offers, then he will conduct a public sale of the property.
>
> . . .
>
> 34. Mr. Sweet reserves the right, and the proposed sale order provides Mr. Sweet with the right, to change the auction date with at least 24 hours notice to interested bidders.
> 35. Bidding will occur in increments of at least $1,000.
> 36. If an auction occurs, then the winning bidder's deposit will be non-refundable and will be applied toward the purchase price.
> 37. If an auction occurs, and Messrs. Bowman and Pomante are not the winning bidders, then Mr. Sweet has agreed to reimburse their out-of-pocket expenses, including mortgage application fees, inspection costs, and any other expenses incurred in connection with their efforts to purchase the Blue Water property, in an amount not to exceed $3,000.
> 38. If no other bidders come forward, then no auction will occur, and Mr. Sweet will close a sale with Messrs. Bowman and Pomante.
> 39. Under the Purchase Agreement, closing will occur within 30 days of Court approval.

On July 14, 2010, the Court approved the Sale Motion ("Sale Order"). The relevant provisions of the Sale Order are as follows:

> 2. Subject to receiving higher or better offers, the proposed sale of the Blue Water Property to John Bowman and Dennis Pomante for $359,900 – on the terms indicated in the Purchase Agreement attached to Mr. Sweet's Motion and incorporated in this Order – is approved.
>
> 3. Any party interested in submitting competing bids on terms at least as favorable as those stated in the Purchase Agreement must provide Mr. Sweet with a signed purchase agreement and a cashier's check or money order deposit in the amount of at least $30,000. Moreover, the signed purchase agreement must make an initial overbid of at least $360,900.
>
> 4. The deadline for submitting competing bids is July 26, 2010, at noon.
>
> 5. If Mr. Sweet receives any higher or better offers, then he will conduct a public auction for the property.
>
> . . .
>
> 8. If an auction occurs, then bidding will occur in increments of at least $1,000.
>
> 9. If an auction occurs, then the winning bidder's deposit will be non-refundable and will be applied toward the purchase price.
>
> 10. If no other bidders come forward, then Mr. Sweet will not conduct the auction, and Mr. Sweet may sell the Blue Water Property to Messrs. Bowman and Pomante.[1]
>
> . . .
>
> 13. Mr. Sweet and the eventual buyer(s) will determine a mutually-agreeable time to close.
>
> . . .
>
> 15. If the sale has not closed by August 16, 2010, then Mr. Sweet – in his sole discretion, without further court order; without notice to parties in interest, Messrs. Bowman and Pomante, or the winning bidder; and without Messrs. Bowman and Pomante's or the winning bidder's permission – may close a sale with the next highest bidder from the auction; or, if no auction took place, then with the best offer then available.

In the interim, Mr. Sweet received indications of interest from other parties and requested, on an ex parte basis, an amendment to the Sale Order. By Order dated July 23, 2010, the Court amended the Sale Order to extend the deadline in paragraph 4, to July 30, 2010, and to modify

---

[1] The Offer to Purchase was signed by Dennis M. Pomante, but the parties understood that he acted for himself and Mr. Bowman. Although technically Mr. Pomante was the only signatory as the buyer, the Court will refer to Mr. Pomante and Mr. Bowman as the buyers.

3

paragraph 7 to state: "Mr. Sweet, in his sole discretion, may change the auction date by providing notice to all qualified bidders who appear at the auction. [Otherwise,] [a]ll provisions of [the Sale Order] remain in effect." As a result, Mr. Sweet held a meeting regarding the sale of the Blue Water Property on July 30, 2010. A transcript of a portion of the auction sale was made and supplied to the Court as Exhibit 9. In the transcript, Mr. Sweet made the initial statements:

> TRUSTEE SWEET: Just for the record, my name is Sam Sweet. We're here today to conduct an auction for the property that we've talked about relative to the David LaFee bankruptcy. We've talked about the terms of sale. The terms are, there has to be a deposit made today of Thirty Thousand Dollars ($30,000) to authorize the bidding. The terms of the sale are a cash sale. We'll be moving towards closing, I think, if I'm not mistaken, in the original document it was 8-14, so we're a couple of weeks away from a closing.

(Tr. Page 4, Lines 10 - 20)

On July 30, 2010, Mr. Pomante questioned whether the procedure was consistent with the orders of this Court.

> TRUSTEE SWEET: I mean, if you have a problem, we can go into court and we can discuss it with the judge. Counselor, if you have a problem, I'll be happy to set up a hearing and we can go in and talk to the judge about this.
> MR. POMANTE: I'll talk to my attorney and then we'll handle this thing.
> TRUSTEE SWEET: No. We're going to get – let's get it resolved right now.
> MR. POMANTE: No, no, no. Wait! Wait! Wait!
> TRUSTEE SWEET: If you have a problem, let's resolve it right now.
> MR. POMANTE: I do have a problem. I do have a problem.
> TRUSTEE SWEET: Okay. Well, what is it?
> MR. POMANTE: I have a problem –
> TRUSTEE SWEET: That there was a higher and a better offer?
> MR. POMANTE: No, it's not that. We weren't even told about these people. We were told about another gentleman that bid Three Hundred and Sixty Thousand ($360,000), and when I came here –
> TRUSTEE SWEET: There was a number of other bidders. In fact, there were six at one time that had an interest in bidding.
> MR. POMANTE: After ours?
> TRUSTEE SWEET: Absolutely, yes. And I've spoken to each one of them.
> MR. POMANTE: Okay.
> TRUSTEE SWEET: These are the only folks that came forward and decided

4

to come to the auction and bid. The other folks had varying levels of interest over viewing the property, sending me documents, things of that nature, trying to figure out what the procedure was.
 MR. POMANTE: Okay.
 MR. TREMAINE: There was supposed to be a third bidder today.
 TRUSTEE SWEET: Yes, yes. I spoke to him last night. It's a Dr. Lincoln Baylis.
 MR. TREMAINE: We didn't know if we were coming into a room full of people or not.
 MR. POMANTE: Okay. All right.
 TRUSTEE SWEET: And I don't know either until we get here who is actually going to show.
 MS. BARCLAE: I would not break that law, so we really – we're interested in the house, but we have a certain point and we're not going to go higher.
 MR. POMANTE: Okay. That's fine.
 TRUSTEE SWEET: All right. The purchase then is Three Hundred and Eighty-Eight Thousand ($388,000) by Mr. Pomante, the original bidder, and as a result, the auction is closed.
 MR. POMANTE: Thank you very much.

(Tr. Page 7, Lines 24 and 25; Page 8, Lines 1 - 25; Page 9, Lines 1 - 25; Page 10, Lines 1 -4)

Subsequently, Mr. Pomante decided that he was not willing to pay the July 30, 2010, bid amount of $388,000. Given Mr. Pomante's decision to not follow through on the bid amount, Mr. Sweet continued his marketing efforts and was finally able to sell the Blue Water Property. One of Mr. Sweet's efforts was to renegotiate with Mr. Pomante at a lower price, but with an expedited closing. By this time, both Mr. Pomante and Mr. Bowman were reluctant to close. For various reasons, Mr. Sweet's efforts involving Mr. Pomante and Mr. Bowman failed. The issue before this Court is whether the Trustee is entitled to the $30,000 deposited by Mr. Pomante with Carson Realty.

## Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters

5

concerning the administration of the estate).

## Discussion

The Court must construe the Sale Motion and Sale Order and first determine whether an auction sale of the Blue Water Property should have occurred. Mr. Pomante argues that the Sale Motion and Order require that Mr. Sweet receive a higher or better offer as evidenced by a signed purchase agreement in an amount of at least $360,900, and a cashier's check or money order deposit in the amount of at least $30,000. At the November 11, 2010, evidentiary hearing on this matter, Mr. Sweet admitted that he did not have a money order deposit or cashier's check in the amount of $30,000. This testimony is supported by Mr. Sweet's statement on July 30, 2010, in which he indicated that the deposit had to be made that day.

In response to Mr. Pomante's argument, the Trustee points out that he was acquainted with the potential purchasers and was satisfied that they had the creditworthiness to consummate the anticipated transaction. Mr. Sweet continues his argument by stating that Mr. Pomante could have aggressively enforced his rights at the July 30, 2010, meeting and requested the Court to make an early determination of whether an auction sale should have been held. Additionally, Mr. Sweet argues that given the subsequent failure of other interested parties, Mr. Sweet offered the Blue Water Property to Mr. Pomante for $359,900, but that offer was subsequently rejected.

The Court's analysis begins and ends with the reading and construction of the Trustee's Sale Motion and the Sale Order. Mr. Sweet, as Trustee, has the right and discretion to set forth the bidding rules and has the right to seek Court approval of those bidding rules. Mr. Sweet did exactly that in this case. The rules selected by Mr. Sweet, however, do not support the award of the security deposit to Mr. Sweet. First, a condition precedent in the Sale Order is contained in paragraph 2 of

6

the Sale Order. In particular, the "subject to receiving higher or better offers" creates a condition, and paragraph 3 sets forth the conditions that must be met, namely a signed purchase agreement and an initial over-bid of at least $360,900, as well as the providing of a cashier's check or money order deposit in the amount of at least $30,000. When these conditions are met, paragraph 5 allows Mr. Sweet to conduct a public auction for the Blue Water Property.

Once a public auction is held, paragraph 9 indicates that the winning bidder's deposit will be non-refundable and applied to the purchase price. The Sale Order also addressed the possibility of no other bidders coming forward, and paragraph 10 states that Mr. Sweet will not conduct the auction and that he may sell the Blue Water Property to Messrs. Bowman and Pomante. In this case, the evidence is clear that Mr. Sweet did not receive the necessary $30,000 deposit in the form of a money order deposit or cashier's check, per Mr. Sweet's November 10, 2010, testimony, as well as his statements on July 30, 2010. Moreover, there is no evidence before the Court that Mr. Sweet received a signed purchase agreement in an amount of at least $360,900.

Accordingly, the Court concludes that the conditions precedent to an auction sale were not met and that neither Mr. Pomante or Mr. Bowman were required to act on an offer above $359,900.

The Court must also address the subsequent developments of other bidders failing to perform and the offer by Mr. Sweet to Mr. Pomante and Mr. Bowman of allowing the purchase of the property at $359,900. First, the Court notes that this offer, while made, was under a significant time constraint that neither Mr. Bowman or Mr. Pomante were comfortable with or capable of meeting. In particular, Mr. Pomante was out of state at the time and was unable to close in the extremely short notice requested by the Trustee. Although the Trustee indicated that additional time could be allowed, the events from July 30, 2010, through August 30, 2010, clearly gave Mr. Pomante and Mr.

7

Bowman significant concerns so as to avoid any hasty decisions and actions.

Second, a close reading of the purchase agreement does not support the Trustee's request for the security deposit. In particular, the purchase agreement allows for the application of the $30,000 to the purchase price if the sale is consummated or returned forthwith if the offer is rejected. The agreement is silent as to an event of a breach by the purchaser. The Offer to Purchase, therefore, does not specifically direct that the security deposit be tendered to the Trustee.

Likewise, the Sale Order covers many contingencies, but not the one before the Court. In particular, the Sale Order directs that if an auction occurs, then the winning bidder's deposit will be non-refundable and will be applied to the purchase price. Since no auction should have occurred, paragraph 9 of the Sale Order is inapplicable. The Sale Order does not address the issue of the winning bidder's deposit being non-refundable if an auction sale does not occur.

Accordingly, the Court concludes that the ambiguity in the Sale Motion and the Sale Order must be attributed to the Trustee and not to Mr. Pomante and Mr. Bowman. The Trustee, who is in the best position to avoid these issues, simply did not address the contingency in the Sale Motion or the Sale Order. Since neither party has supplied the Court with any Michigan authority governing this fact pattern, the Court concludes that the deposit should be returned to Mr. Pomante and Mr. Bowman.

For the reasons stated in this Opinion, the Court denies the Motion of the Trustee to Compel Delivery of Earnest Money Deposit. Counsel for Mr. Pomante and Mr. Bowman are directed to prepare an order consistent with this Opinion.

**Signed on March 25, 2011**

                                               **/s/ Daniel S. Opperman**
                                                  **Daniel S. Opperman**
                                                  **United States Bankruptcy Judge**